[Crim. No. 2675. Second Appellate District, Division Two.—March 8, 1935.]

THE PEOPLE, Respondent, v. NATHAN WEINBERG et al., Appellants.

Entenza & Gramer for Appellants.

U. S. Webb, Attorney-General, and Eugene M. Elson, Deputy Attorney-General, for Respondent.

SCOTT, J., *pro tem.*—Defendants, husband and wife, were convicted in count one of arson and in count two of burning insured property, and from such judgments each appeals.

In January, 1934, defendants occupied a rented dwelling at the beach in Venice, in which they had installed their own furniture and possessions, which had been insured for $2,500 against fire. On the evening of the fire defendants and their two children locked the house and went to the amusement zone. An hour or so later a neighbor noticed smoke and flames coming out of defendants' chimney and made an entrance. There was fire in the fireplace and in an overstuffed chair fifteen to twenty feet away, and much smoke. The fire department arrived shortly thereafter. A battalion chief smelled something like kerosene on the rug in the front room. A runner rug was saturated with something which he thought was kerosene. Wood was littered in front of and in contact with the wood burning in the fireplace, having a similar odor. A puddle of the liquid substance was on the floor in the bedroom under a crib. An open door led into a closet where there were clothes, smelling of the same substance. Some wall paper had been burned and had curled up, and still had sparks of fire on it. A window shade and curtain had been burned off and a radio had a little fire in it. Two-thirds of the surface of the rug in the front room was scorched and a portion leading across into the bedroom was burned through to the floor. In the bedroom were crumpled papers on the floor and in the doorway leading into the closet. The captain of the arson squad observed these conditions, and when defendants had returned home shortly after 11 o'clock he questioned Mrs. Weinberg about the liquid. She called it cleaning fluid and stated she had used it on the rugs and her husband's coat in the closet, and that she might have spilled some on the floor in the bedroom and on the clothing, rags and papers on the closet floor. The can in which she claimed she kept the fluid contained about a teaspoonful of a liquid smelling like kerosene, and had dust all around the top. ■ The evidence was ample to show the criminal origin of the fire.

After the fire defendants went through the house with the captain of the fire department, and Mr. Weinberg said he guessed $700 to $750 would cover the loss. Proof of loss of $273 was submitted. After his arrest he agreed to accept $50 in full settlement. The neighbor who had first discovered the fire and had entered the house testified that after the preliminary hearing in this case Mr. Weinberg called at his house and said "that it would help him (Weinberg) if I said the screen was over the fireplace".

At the time of his arrest Weinberg told a member of the arson squad that if they took him to jail it would only be a matter of two or three weeks until his family would have to live off the county, because he had no work and no money. At the trial he testified to owning real estate and securities worth about $20,000, and that he was drawing $100 a month disability insurance.

The jury's conclusion that appellants had committed the crimes charged is supported by the record.

Appellants complain of the exclusion by the trial court of testimony to the effect that Weinberg attached "special" value to his parents' picture, which was exposed to the fire, although no offer was made to show its insurable value; and also, after they had testified that they had intended to take out only a $1,000 policy of fire insurance instead of one for $2,500, the court ruled out testimony as to what appellants said to each other when the changed their minds. In view of a comprehensive questioning on all of the material issues, it does not seem that the questions, even if answered, would have given the jury a more complete understanding of the case.

Certain instructions are likewise assailed which appear to have merely stated legal principles applicable to the case which are so well settled as to require no discussion. The trial court is accused of prejudicial misconduct which appears to have escaped notice of counsel during the trial, because no such objection was interposed at the time. It seems from the record that the court was merely trying to guide both counsel in their argument so as to avoid injustice to either defendants or the People.

Judgments affirmed.

Stephens, P. J., and Crail, J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 4, 1935.